UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



---

LAM CHEE HONG,

      Petitioner,

v.                                      25-CV-182 (JLS)

PAMELA BONDI, Attorney General of
the United States, and JOSEPH E.
FREDEN, in his official capacity as
Officer-in-Charge, Buffalo Federal
Detention Facility,

      Respondents.

---

## DECISION AND ORDER

Petitioner Lam Chee Hong, a native and citizen of the People's Republic of China, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the relief requested is DENIED and the petition is DISMISSED.

## BACKGROUND

Hong has been in Department of Homeland Security ("DHS") custody since June 21, 2024. *See* Dkt. 1 at 1;[1] Dkt. 9-1 ¶ 32. He is detained pending completion of removal proceedings that began after he was convicted of fraud in violation of

---

[1] Page numbers refer to the CM/ECF generated numbering in the header of each page.

federal law. Currently, he is housed at the Buffalo Federal Detention Facility. Dkt. 1 at 2; Dkt. 9-1 ¶ 38.

## I. OVERVIEW OF REMOVAL PROCEEDINGS

Petitioner is a native and citizen of China. Dkt. 9-1 ¶ 5. According to Respondents, he "entered the United States at an unknown location, on an unknown date, without inspection, in contravention of immigration law." *Id.*; Dkt. 9-2 at 13. In 2011, Petitioner was convicted of Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2) in the United States District Court for the Western District of Michigan. Dkt. 9-1 ¶ 7; Dkt. 9-2 at 1-11, 13. And he was sentenced to a term of imprisonment of 57 months and ordered to pay restitution. Dkt. 9-2 at 1-11.

On or around June 25, 2013, U.S. Immigration and Customs Enforcement ("ICE") encountered Petitioner while he was incarcerated at Moshannon Valley Correctional Center. Dkt. 9-1 ¶ 8; Dkt. 9-2 at 13. ICE then issued a Notice to Appear, dated July 15, 2013, which initiated removal proceedings against Petitioner. Dkt. 9-1 ¶ 8; Dkt. 9-2 at 15. On August 27, 2013, an Immigration Judge ordered Petitioner removed from the United States. Dkt. 9-1 ¶ 9; Dkt. 9-2 at 18. The Immigration Judge's order provided that any appeal of the removal order was due by September 26, 2013. Dkt. 9-2 at 18. But there is no evidence that Petitioner ever filed an appeal. Dkt. 9-1 ¶ 9.

On May 29, 2015, Petitioner was released from criminal custody and taken into ICE custody. *Id.* ¶ 10. In December 2015, however, ICE determined that Petitioner could be released from custody pending removal from the United States.

2

*Id.* ¶ 13; Dkt. 9-2 at 23.[2] The Release Notification stated that, within 30 days of release from custody, Petitioner must report to an ICE office with a valid travel document or proof of a pending application for a travel document. Dkt. 9-2 at 23.

Petitioner checked in with ICE several times between December 2015 and October 2017. *See* Dkt. 9-1 ¶¶ 14-19. But he failed to check in, as instructed, on at least two occasions—including on March 1, 2017 and January 23, 2018. *See id.* ¶¶ 17, 19. And he was subsequently arrested on at least six occasions between January 2019 and January 2021. *See id.* ¶¶ 21-26. ICE issued an immigration detainer following each arrest, but the detainers were not honored. *See id.*

Beginning in 2022, Petitioner faced a series of criminal charges. More specifically, on November 5, 2022, he was charged with Petit Larceny and Criminal Possession of Stolen Property. *Id.* ¶ 27.[3] He was then charged with Criminal Possession of a Controlled Substance and Petit Larceny on December 12, 2022. *Id.* ¶ 28. And on May 7, 2023, he was arrested and charged with Grand Larceny. *Id.* ¶ 29.

On April 15, 2024, upon learning that Petitioner was incarcerated on criminal charges at Ulster Correctional Facility, ICE filed another immigration detainer. *See id.* ¶ 31; Dkt. 9-2 at 26. On June 21, 2024, Petitioner was released from criminal custody and again taken into ICE custody. Dkt. 9-1 ¶ 32. ICE then

---

[2] ICE had reviewed Petitioner's custody status in August 2015 and determined that he would not be released at that time due to flight risk. *See* Dkt. 9-1 ¶¶ 11-12; Dkt. 9-2 at 21.

[3] It does not appear that Petitioner was arrested at this time. *Id.*

3

issued a Warrant of Removal/Deportation against Petitioner. Dkt. 9-1 ¶ 33; Dkt. 9-2 at 27. Currently, Petitioner remains in ICE custody—at the Buffalo Federal Detention Facility—pending removal. *See* Dkt. 9-1 ¶ 38.

## II.   EFFORTS TO REMOVE PETITIONER

In its December 2015 Release Notification, ICE stated that it "will continue to make efforts to obtain [Petitioner's] travel document that will allow the United States government to carry out" his removal order. Dkt. 9-2 at 24. And it informed Petitioner that he is "required by law to continue to make good faith efforts to secure a travel document on [his] own and provide proof of [his] efforts to ICE." *Id.* After Petitioner failed to check in with ICE on March 1, 2017, ICE contacted him and directed him to obtain "paperwork regarding his Chinese citizenship so that a travel document could be obtained." Dkt. 9-1 ¶ 17.

In addition, when Petitioner was taken into ICE custody on June 26, 2024, ICE sent a letter to the Consulate General of the People's Republic of China requesting that travel documents be issued for Petitioner's removal. *Id.* ¶ 33; Dkt. 9-2 at 29.[4] According to Respondents, ICE expected travel documents to issue imminently. Dkt. 9-1 ¶ 36. Petitioner was scheduled for removal, therefore, on a flight departing on October 15, 2024. *Id.*; Dkt. 9-2 at 28. Ultimately, Petitioner could not be removed on that date because ICE had not yet received

---

[4] ICE advised Petitioner on September 11, 2024, that his detention would continue because he posed both a flight risk and a danger to the community. *See* Dkt. 9-1 ¶ 35; Dkt. 9-2 at 32.

4

travel documents from China. Dkt. 9-1 ¶ 36. But ICE has been "checking in with the Chinese consulate on an almost weekly basis for updates regarding a travel document" for Petitioner's removal. *Id.* ¶ 37. And a "travel document is expected to issue in the near future." *Id.*

### III.   THE INSTANT PETITION

On February 27, 2025, Petitioner filed a Petition with this Court, Dkt. 1, seeking a writ of habeas corpus to remedy what he believes is "unlawful detention." *See id.* at 1. Petitioner argues that the Chinese consulate "has not issued travel documents[,] and there is no certainty as to when, if ever, such papers will be issued." *Id.* ¶ 15. He claims that, because "he has been in custody for over six months and will not be able to be removed to China in the reasonably foreseeable future," his "continued detention" is "unlawful[,] and contravenes 8 U.S.C. § 1231(a)(6)." *Id.* ¶¶ 31-32. Petitioner further claims that his "prolonged detention [of] more than six months" without "meaningful review" violates his Fifth Amendment substantive and procedural due process rights. *Id.* ¶¶ 35, 38. He seeks an order requiring Respondents to "promptly" release him. *Id.* at 15 (prayer for relief).

Respondent filed an Answer and Return, arguing that "Petitioner has not shown good cause to believe his removal is not significantly likely to occur within the reasonably foreseeable future, and, in any event, the Government can rebut such a showing." Dkt. 9 at 1. Petitioner did not reply.

## DISCUSSION

Petitioner's detention under Section 1231 comports with the Fifth Amendment. As explained below, Petitioner fails to establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. He is not, therefore, entitled to *habeas* relief.

## I. JURISDICTION

Habeas corpus review is available to persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Circuit courts have jurisdiction, to the exclusion of district courts, over challenges to the legality of final orders of deportation, exclusion, and removal. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

## II. STATUTORY BASIS FOR DETENTION

8 U.S.C. § 1231 governs the detention of aliens *during and after the removal period*—namely, those who, like Petitioner, are subject to final orders of removal.[5] This period is derived from the statute, which provides DHS 90 days to

---

[5] There does not appear to be any dispute that Petitioner is detained under Section 1231. *See* Dkt. 9-3 at 3 ("Petitioner is detained pursuant to 8 U.S.C. § 1231 as an

effectuate a removal from the United States following the entry of a final order of deportation or removal. *See* § 1231(a)(1)(A).

Section 1231(a)(1)(B) provides that the "removal period" begins at the latest of the following events:

(i) The date the order of removal becomes administratively final;
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

During the 90-day removal period, detention is mandatory. *Id.* § 1231(a)(2). Once this removal period is over, however, detention is discretionary: an alien may be detained beyond the removal period if, among other things, he is removable under certain provisions of 8 U.S.C. § 1227. *See id.* § 1231(a)(6).

## III. THE DUE PROCESS CLAUSE

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the "Supreme Court was faced with the challenge of reconciling" the statute's "apparent authorization of indefinite executive detention with the Due Process Clause of the Fifth Amendment." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (citing *Zadvydas*, 533 U.S. at 701). The Supreme Court held that six months of detention is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. And after six months, a detained noncitizen may seek release by "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

---

alien with a final order of removal"); Dkt. 1 ¶ 21 (acknowledging that Petitioner is "subject to a final order of removal").

7

*Id.* at 701. The government then "must respond with evidence sufficient to rebut that showing." *Id.*

## IV. ANALYSIS

Petitioner has been detained under Section 1231 for almost twelve months. His statutory 90-day removal period began on June 21, 2024, when he was taken into ICE custody upon release from criminal custody. *See Id.* § 1231(a)(1)(B)(iii).[6] That removal period expired on September 19, 2024. And the six-month "presumptively reasonable" period under *Zadvydas* expired on December 21, 2024. Although Petitioner has been detained beyond the six-month *Zadvydas* period, this record reveals no "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Petitioner's detention under Section 1231, therefore, does not violate his Fifth Amendment due process rights.

Indeed, DHS has taken various steps to effectuate Petitioner's removal from the United States. Upon Petitioner's release from ICE custody in December 2015, ICE advised that it "will continue to make efforts to obtain [Petitioner's] travel document that will allow the United States government to carry out" his removal order. Dkt. 9-2 at 24. And it further informed Petitioner that he is "required by law

---

[6] This occurred later than the date that Petitioner's order of removal became administratively final (on September 26, 2013). *See* 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge . . . shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"). *See* Section 1231(a)(1)(B)(i). And Petitioner has not obtained a stay of removal from the Second Circuit. *See id.* § 1231(a)(1)(B)(ii).

8

to continue to make good faith efforts to secure a travel document on [his] own and provide proof of [his] efforts to ICE." *Id.* After Petitioner failed to check in with ICE on March 1, 2017, ICE contacted him and directed him to obtain paperwork regarding his Chinese citizenship so that a travel document could be secured for him. Dkt. 9-1 ¶ 17. ICE also issued multiple immigration detainers between January 2019 and January 2021 (which were not honored). *See id.* ¶¶ 21-26.

When Petitioner returned to ICE custody on June 26, 2024, ICE sent a letter to the Consulate General of the People's Republic of China requesting travel documents. *Id.* ¶ 33; Dkt. 9-2 at 29. Petitioner was scheduled for removal on a flight departing on October 15, 2024—but could not be removed on that date because ICE had not yet received travel documents from China. Dkt. 9-1 ¶ 36. ICE has, however, been "checking in with the Chinese consulate on an almost weekly basis for updates regarding a travel document" for Petitioner's removal. *Id.* ¶ 37. And, according to Respondents, a "travel document is expected to issue in the near future." *Id.*

Petitioner argues that his "consulate has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued." Dkt. 1 ¶ 15. But "several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*." *Almonte v. Holder*, 983 F. Supp. 2d 234, 240 (W.D.N.Y. 2013) (collecting cases). And

indeed, ICE has successfully removed hundreds of Chinese nationals to China in recent years. *See* DHS, 2022 Yearbook of Immigration Statistics, Table 42. Noncitizen Removals by Criminal Status and Region and Country of Nationality: Fiscal Years 2013 to 2022; available at: https://ohss.dhs.gov/topics/immigration/yearbook/2022/table42 (showing 1,092 Chinese nationals removed in 2020-22) (last accessed June 9, 2025).

Lastly, the Court rejects Petitioner's claim that he has not been afforded adequate process in the form of review of his custody status. ICE reviewed Petitioner's custody status on September 11, 2024, and determined that he posed both a flight risk and danger to the community. Dkt. 9-1 ¶ 35; Dkt. 9-2 at 32. *See Abimbola v. Ridge,* 181 F. App'x 97, 99 (2d Cir. 2006) ("Although [Petitioner] has been detained well beyond the six-month period, the INS has reviewed [his] detention on at least two occasions, providing him with notice of at least the most recent reviews, and determined that [he] was a flight risk and that his removal could be effectuated as soon as judicial review of his removal was complete").

In sum, while is true that Petitioner has been detained under Section 1231 beyond the six-month *Zadvydas* period, the Court finds that Petitioner has failed to meet his initial burden under *Zadvydas* to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 533 U.S. at 701. On this record, no due process violation has occurred.[7]

---

[7] Because Petitioner did not demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Court

## CONCLUSION

For reasons above, the relief requested is DENIED. The Petition is DISMISSED without prejudice to the filing of any new Petition in the future based on new and different facts and consistent with the analysis above. The Clerk of Court shall close this case.

SO ORDERED.

Dated:   June 9, 2025
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

need not determine whether the Government rebutted such a showing. *See Zadvydas*, 533 U.S. at 701. In any event, on this record, the Court concludes that the Government has done so.